\*\* E-filed on 8/26/05 \*\*

NOT FOR CITATION

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| CHARLES NEERDAELS,<br><br>              Plaintiff,<br><br>              v.<br><br>GROUP SHORT TERM DISABILITY AND LONG TERM DISABILITY PLAN FOR EMPLOYEES OF AKAMAI TECHNOLOGIES, INC.,<br><br>              Defendant. | Case Number C 04-00721 JF<br><br>ORDER[1] DENYING PLAINTIFF'S MOTION TO ADMIT NEW EVIDENCE OUTSIDE OF THE ADMINISTRATIVE RECORD<br><br>[Docket No. 50] |

      Plaintiff Charles Neerdaels ("Neerdaels") moves to admit new evidence outside of the administrative record. Defendant Group Short Term Disability and Long Term Disability Plan for Employees of Akamai Technologies, Inc. ("Plan") opposes the motion. The Court has read the moving and responding papers and has considered the oral arguments of counsel presented on August 26, 2005. For the reasons set forth below, Neerdaels' motion will be denied.

//

//

---

[1] This disposition is not designated for publication and may not be cited.

Case No. C 04-00721 JF
ORDER DENYING PLAINTIFF'S MOTION TO ADMIT NEW EVIDENCE OUTSIDE OF THE ADMINISTRATIVE RECORD
(JFLC1)

## I. BACKGROUND

This case arises out of Neerdaels' claim that the Plan improperly denied him long-term disability benefits to which he was entitled under the Employee Retirement Income Security Act of 1974 ("ERISA"). *See* 29 U.S.C. §§ 1001 *et seq*. Neerdaels, who has multiple sclerosis ("MS"), was hired by Akamai Technologies, Inc. ("Akamai") in September 1999 as its director of engineering.[2] On December 19, 2001, he took a leave of absence from work due to complications related to his MS. He received short-term disability benefits from December 27, 2001, through March 5, 2002. On March 6, 2002, with authorization from his doctor, Peter Cassini, Neerdaels returned to work, because, as he explains it, he could not accept labeling himself as disabled. However, less than two months later, on April 23, 2002, he tendered his resignation to Akamai, effective May 6, 2002. In March 2003, Neerdaels submitted to the Plan an application for long-term disability benefits. The Plan is administered and insured by Hartford Life and Accident Insurance Company ("Hartford"). Neerdaels' application included an "Attending Physician's Statement of Disability," completed by Dr. Cassini, which stated, among other things, that the onset of Neerdaels' MS was in January 2000, that Neerdaels became unable to work due to MS-related impairments on December 1, 2001, and that he expected Neerdaels' limitations would last for the "rest of [Neerdaels'] life."

On March 5, 2003, Hartford informed Neerdaels that it was preparing to review his claim for potential eligibility for long-term disability benefits effective August 5, 2002. On March 31, 2003, Hartford denied Neerdaels' claim, concluding that he no longer was covered by the Plan, because he ceased to be an "Active Full-time Employee" when he terminated his employment with Akamai on May 6, 2002. On September 23, 2003, Neerdaels appealed the denial of long-term disability benefits, claiming that Hartford had made an error in its conclusion that he was not eligible. On December 9, 2003, Hartford informed Neerdaels of its determination that its

---

[2] For a more detailed recitation of the factual background of this action, see the Court's Order of November 10, 2004, granting Neerdaels' motion for partial summary judgment to determine the standard of review.

2

1  original decision to deny his claim for long-term disability benefits was appropriate and would
2  stand. Relying on the results of a medical record review conducted by Dr. Brian Mercer, Hartford
3  agreed that Neerdaels was disabled for the period of December 21, 2001, through March 5, 2002,
4  but stated that it found no medical evidence to support his claim that he was disabled at the time
5  he resigned. Therefore, Hartford concluded that Neerdaels no longer was covered under the Plan
6  at the time of his resignation, as he no longer was in an eligible class of employees. This
7  determination represented Hartford's final decision on Neerdaels' claim.

8  On November 10, 2004, the Court granted Neerdaels' motion for partial summary
9  judgment to determine the standard of review of Hartford's denial of his claim for long-term
10 disability benefits. The Court concluded that it would conduct a *de novo* review of the denial,
11 because Hartford failed to produce evidence that the apparent conflict of interest created by its
12 responsibility for both funding and paying claims under the Plan did not affect its decision to
13 deny Neerdaels' application for benefits. Neerdaels now moves to admit new evidence outside of
14 the administrative record for purposes of the Court's review.

## II. LEGAL STANDARD

16 When reviewing the denial of a claim for benefits pursuant to ERISA, a district court, in
17 its discretion, may admit evidence that was not before the plan administrator. *Mongeluzo v.*
18 *Baxter Travenol Long Term Disability Benefit Plan*, 46 F.3d 938, 943-44 (9th Cir. 1995).
19 However, a court should exercise its discretion to admit such evidence "'only when
20 circumstances clearly establish that additional evidence is necessary to conduct an adequate *de*
21 *novo* review of the benefit decision.'" *Id*. at 944 (quoting *Quesinberry v. Life Ins. Co. of N. Am.*,
22 987 F.2d 1017, 1025 (4th Cir. 1993)). In most cases, additional evidence is not necessary for an
23 adequate review of the benefits decision, and the court therefore should limit its review to the
24 evidence that was before the plan administrator at the time of the administrator's determination.
25 *Id*. The United States Court of Appeals for the Ninth Circuit has emphasized that a district court
26 "should not take additional evidence merely because someone at a later time comes up with new
27 evidence that was not presented to the plan administrator." *Id*. (remanding with instructions to

1  consider new evidence where such evidence presented new possible explanation for claimant's
2  disability and where original hearing was "conducted under a misconception of the law" and of
3  the definitions of "mental illness" and "functional nervous disorder"); *see also Kearney v.*
4  *Standard Ins. Co.*, 175 F.3d 1084, 1091 (9th Cir. 1999) (holding that district court did not abuse
5  its discretion in limiting review to administrative record where claimant easily could have
6  submitted proposed new evidence to plan administrator and where court did not need additional
7  evidence to conduct adequate *de novo* review).[3]

## III. DISCUSSION

Neerdaels moves to admit two new pieces of evidence for purposes of the Court's *de novo* review of Hartford's denial of his claim for long-term disability benefits: (1) MRI images of Neerdaels' brain taken in July 2002 as part of his participation in a study by the University of California, San Francisco, Medical Center, which purportedly did not become available until February 2005, *see* Davidson Decl., Ex. 3, and (2) a letter from Dr. Cassini dated May 20, 2005, responding to Dr. Mercer's conclusion that there was no medical evidence to support Neerdaels' claim that he was disabled at the time he resigned, commenting on the July 2002 MRI images, and answering various questions about Neerdaels' condition posed by Neerdaels' counsel ("Cassini Letter"), *see* Davidson Decl., Ex. 1. In the exercise of its discretion, the Court declines to admit this evidence, as the circumstances do not clearly establish that these two items are necessary for the Court to conduct an adequate *de novo* review of Hartford's benefits decision. *See Mongeluzo*, 46 F.3d at 944.

In order for the Court to find that Neerdaels was entitled to long-term disability benefits under the Plan, it must find, among other things, that Neerdaels was "Disabled" while insured under the Plan and that he remained "Disabled" throughout and beyond the "Elimination Period." *See* POL028. "Disabled" means that the claimant is prevented by sickness or another specified

---

[3] It is unclear why Neerdaels discusses *Walker v. American Home Shield Long Term Disability Plan*, 180 F.3d 1065, 1070-71 (9th Cir. 1999), as the instant motion does not involve the issue of whether the Court should appoint an independent medical expert to help it evaluate the medical evidence in this case.

4

condition from performing one or more of the "Essential Duties" of his occupation and, as a result, his "Current Monthly Earnings" are no more than eighty percent of his "Indexed Pre-disability Earnings." POL038. An "Essential Duty" is a duty that is "substantial, not incidental," is "fundamental or inherent to the occupation," and cannot be "reasonably omitted or changed." POL039. The "Elimination Period" is the period of time the claimant must be "Disabled" before benefits become payable; for the purposes of this case, it is the first ninety consecutive days of any one period of "Disability." POL026.

Standing alone, the MRI images, although taken during Neerdaels' "Elimination Period," as calculated by Hartford, do not add anything new to the Court's review, as they themselves do not draw a connection between Neerdaels' condition, as depicted in the images, and his inability to perform one or more "Essential Duties" of his occupation. The Cassini Letter appears to attempt to supply this missing connection, explaining that the MRI images[4] "[s]how multiple areas of damage to Mr. Neerdaels' brain . . . consistent with his clinical presentation at the time" and that "[t]his damage and additional damage to his spinal cord is [sic] the source of his neurologic deficits." Davidson Decl., Ex. 1 at 2. However, this explanation establishes only that Neerdaels was suffering from neurologic deficits without elaborating on how the MRI images demonstrate the extent of Neerdaels' disability or his inability to perform one or more "Essential Duties" of his occupation. Moreover, the Cassini Letter concedes that the results of the MRI scans are "consistent with [Neerdaels'] clinical presentation" in July 2002, which implies that they do not contribute significant, if any, information beyond what can be found in the evaluations of Neerdaels conducted during the same time period. The mere unavailability of the MRI images during the administrative review process does not warrant their admission as evidence in the instant proceedings absent a showing by Neerdaels that they are necessary in order for the Court to conduct an adequate *de novo* review.

---

[4] The Court assumes that Dr. Cassini is referring to the same MRI images sought to be admitted through the instant motion, despite his reference to brain scans from July *2003*. *See* Davidson Decl., Ex. 1 at 2.

5

Case No. C 04-00721 JF
ORDER DENYING PLAINTIFF'S MOTION TO ADMIT NEW EVIDENCE OUTSIDE OF THE ADMINISTRATIVE RECORD
(JFLC1)

      The Court also finds that the Cassini Letter is not essential to its ability to conduct an adequate *de novo* review. The predominant shortcoming of the Cassini Letter is that it offers opinions about Neerdaels' condition that are not specifically limited to an analysis of his abilities at the time of his resignation or during the "Elimination Period." In fact, many of Dr. Cassini's observations seem to relate to the recent past or some unspecified period since his diagnosis.[5] For example, Dr. Cassini states generally that "[o]ver time Mr. Neerdaels has accumulated permanent neurologic deficits," that Neerdaels' MS "definitely has affected his intellect and mood," that Neerdaels' condition "is continuously disabling, day to day, week to week," that Neerdaels' condition has worsened in particular ways over the last twelve to eighteen months, and that "[o]ver time, Mr. Neerdaels' MS is causing progressive permanent neurologic damage." Davidson Decl., Ex. 1 at 2-3. Furthermore, where Dr. Cassini does comment specifically on events and information from the time period relevant to the Court's review, his statements either do not add anything that would render substantial aid to the Court (e.g., the fact of his disagreement with Dr. Mercer's conclusions, his opinion that Neerdaels' disability is supported by objective findings, his statement that Neerdaels has MS) or appear to contradict other evidence in the administrative record, including his own earlier statements (e.g., his statement that Neerdaels was completely disabled as of the spring of 2001, despite the fact that Neerdaels did not take his first leave of absence until December 2001). *See* Davidson Decl., Ex. 1. The mere fact that Dr. Cassini may not have had an opportunity to respond to Dr. Mercer's report prior to Hartford's affirmation of its denial of Neerdaels' claim on appeal—and thus was precluded from having his response become a part of the administrative record—does not call for admission of the Cassini Letter in the instant litigation where its contents are not necessary to the Court's *de novo* review of Hartford's benefits decision.

//

---

[5] Neerdaels' counsel conceded at the hearing on the instant motion that Dr. Cassini's comments regarding the current state of Neerdaels' condition should not be admitted as new evidence.

6

Case No. C 04-00721 JF
ORDER DENYING PLAINTIFF'S MOTION TO ADMIT NEW EVIDENCE OUTSIDE OF THE ADMINISTRATIVE RECORD
(JFLC1)

### IV. ORDER

Good cause therefore appearing, IT IS HEREBY ORDERED that Neerdaels' motion to admit new evidence outside of the administrative record is DENIED.

DATED: August 26, 2005

/s/ (electronic signature authorized)
JEREMY FOGEL
United States District Judge

7

Case No. C 04-00721 JF
ORDER DENYING PLAINTIFF'S MOTION TO ADMIT NEW EVIDENCE OUTSIDE OF THE ADMINISTRATIVE RECORD
(JFLC1)

1  This Order has been served upon the following persons:

Thornton Davidson      rosatilaw@aol.com, jjills2@hotmail.com, jll_flks@yahoo.com

Dennis G. Rolstad      dennis.rolstad@sdma.com

Case No. C 04-00721 JF
ORDER DENYING PLAINTIFF'S MOTION TO ADMIT NEW EVIDENCE OUTSIDE OF THE ADMINISTRATIVE RECORD
(JFLC1)